IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA MILBRANDT and ESTHER ZEPEDA, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 15 C 7050 |
| v. | ) ) | |
| DOROTHY BROWN, in her individual capacity and as CLERK OF THE CIRCUIT COURT OF COOK COUNTY; and COOK COUNTY, | ) ) ) ) ) ) | Magistrate Judge Maria Valdez |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are both employed at the Third Municipal District Courthouse in Cook County, Illinois. Plaintiffs' First Amended Complaint alleges that Defendants, their employer, discriminated against them on the basis of national origin and ancestry, in violation of the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. § 5/2-102; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; and Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983. Plaintiffs also plead a common law claim for Intentional Infliction of Emotional Distress ("IIED").[1] The matter is now before the Court on Defendants' Motion to Dismiss and/or Strike Plaintiffs' First Amended Complaint [Doc. No. 27]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §

---

[1] Both Plaintiffs allege violations of Section 1983 and Intentional Infliction of Emotional Distress. Plaintiff Milbrandt alone alleges violations of Title VII and the IHRA.

1

636(c). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The original complaint in this case was brought solely by Plaintiff Milbrandt and alleged violations of the IHRA and Title VII, and breach of the relevant collective bargaining agreement ("CBA"). Defendants then filed a partial motion to dismiss, arguing that Milbrandt's Title VII claim should be dismissed due to failure to exhaust administrative remedies, and the breach of CBA should be dismissed because Milbrandt failed to use the grievance procedure available under the CBA. Plaintiff agreed to file an amended complaint in order to address the issues raised Defendants, and Defendants in turn withdrew their motion. [11/4/15 Minute Order, Doc. No. 20.]

Plaintiffs' First Amended Complaint, filed on December 18, 2015, omitted the count alleging breach of the CBA and added the IIED and Section 1983 claims. It also added Zepeda as a plaintiff. The complaint alleges that Plaintiffs suffered discrimination in the form of denials of cross-training and promotions and were subjected to a hostile work environment based on their Hispanic ancestry and national origin.[2] Plaintiffs further claim they were subjected to emotionally distressing scrutiny and harassing remarks by supervisors. Finally, Plaintiffs allege an unlawful practice whereby employees are hired or promoted for paying money directly to Defendant Brown.

---

[2] Milbrandt is originally from Mexico, and Zepeda is from El Salvador.

Defendants now move to dismiss the complaint because (1) the discrimination claims fall outside the scope of the charges filed with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"); (2) the IIED claims are preempted by the IHRA; (3) Milbrandt's IIED claim is time-barred by the Tort Immunity Act, 745 Ill. Comp. Stat. § 10/8-101; (4) both IIED counts fail to state an actionable claim; (5) the Section 1983 claims are time-barred; and (6) Plaintiffs have failed to adequately allege Section 1983 *Monell* claims. Defendants further argue that because Plaintiffs did not seek leave of court to add Zepeda to the complaint, it should be stricken or, in the alternative, the Plaintiffs' claims should be severed into two separate lawsuits.

## **DISCUSSION**

### I. **LEGAL STANDARD**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of a complaint, not to decide the merits of a case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In determining whether to grant a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and

the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

However, "a plaintiff's obligation to provide the grounds for entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Seventh Circuit has read the Twombly decision as imposing "two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concerta Health Servs.*, Inc., 496 F.3d 773, 776 (7th Cir. 2007) (internal citations and quotations omitted). In determining what "plausibly" means, the Seventh Circuit has explained that "the complaint must establish a nonnegligible probability that the claim is valid; but the probability need not be as great as such terms as 'preponderance of the evidence' connote." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010).

## II. ANALYSIS

### A. <u>Scope of Discrimination Charges</u>

Defendants first argue that Milbrandt's discrimination claims (Counts I and II) should be dismissed because they fall outside the scope of the charge filed with the IDHR and EEOC. The charge, which is attached to the complaint as an exhibit,

4

states that on November 22, 2013, Defendants failed to promote her to the position of Court Clerk I-Traffic on the basis of her Hispanic ancestry and national origin, Mexico. (First Am. Compl., Ex. A, at 1-2); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The complaint alleges numerous instances of alleged discrimination other than the November 22, 2013 denial of promotion, including: (1) denial of cross-training several times since 2004, including 2005, 2008, and 2013; (2) repeated denial of promotions over her twenty-year career, including in August 2008, October 2008, and August 2013; and (3) creating a hostile work environment.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (noting that the rule is not jurisdictional but "is a condition precedent with which Title VII plaintiffs must comply"); *see Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."); *see also McQueen v. City of Chi.*, 803 F. Supp. 892, 902 (N.D. Ill. 2011) (explaining that Illinois has adopted the Title VII framework, including the exhaustion rule, for cases brought under the IHRA) (citing *Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687-88 (Ill. 1989).

However, courts are directed to review the scope of an EEOC charge liberally, and certain claims not made in an EEOC charge can nevertheless be brought "if

they are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (citation and internal quotation omitted); *see Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 831 (7th Cir. 2015); *see also Cheek*, 31 F.3d at 500 (explaining that when determining whether claims are reasonably related to the charge, plaintiffs are granted "significant leeway").

The relevant inquiry is whether "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500-01 ("[T]he EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*.") (emphasis in original).

Plaintiffs acknowledge that Milbrandt's discrimination claims are not explicitly stated in her charge but argue that it implicates the same general conduct and the same individuals, namely Defendants, and that Defendants were given fair warning of the conduct complained of, given that the charge is based on ancestry and national origin discrimination. Plaintiffs further contend that "the Complaint Information Sheet Milbrandt filed with the IDHR indicates that Defendants failed, on multiple occasions, to promote Milbrandt, previously [sic] to the November 22, 2013 failure to promote." (Pls.' Resp. at 3.) In addition, Plaintiffs maintain that the complaint's claims could have grown out of an EEOC investigation; for example, it could have reasonably led to a finding that she was denied cross-training, that she

6

was subject to a hostile work environment, and that the conduct took place over an extended period of time.

The Court concludes that Milbrandt's EEOC charge failed to preserve her claims alleging a denial of cross-training and hostile work environment. A general allegation that she was subject to discrimination based on ancestry and national origin is not sufficient as a matter of law to preserve any and all discrimination claims. *See Rush*, 966 F.2d at 1110 ("[T]he goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship.").

Similarly, Plaintiffs' contention that failure to cross-train and failure to promote implicate "the same general conduct" is unpersuasive. The argument is merely another way of stating that all discriminatory conduct is the same, no matter what form it takes. *Cheek*, 31 F.3d at 501 ("Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination."); *see also Moore*, 641 F.3d at 257 ("[M]erely checking the "Race" and "Sex" discrimination boxes in the EEOC charge is not enough to make the EEOC charge like or reasonably related to [the plaintiff's] discriminatory discharge claims.").

Plaintiffs' conclusion that an EEOC investigation could be expected to reveal the existence of a hostile work environment or failure to train also does not preserve

7

those claims. Any EEOC investigation could theoretically reveal other instances of discriminatory conduct. If that alone satisfied the requirement that there be a reasonable relationship between the charge and complaint, the requirement would be a nullity. *See Rush*, 966 F.2d at 1112 (holding that charges of racially discriminatory termination and failure to promote did not preserve a claim alleging racial harassment).

Nevertheless, Milbrandt's claims related to denial of promotions, including promotions other than the November 22, 2013 promotion specifically listed in the charge, are sufficient to withstand a motion to dismiss. Plaintiffs' response states that she included with the charge a Complaint Information Sheet indicating that she was denied multiple promotions, which is sufficient to preserve her claims of failure to promote. *See Cheek*, 31 F.3d at 502 (holding that "[a]llegations outside the body of the charge," such as an affidavit or addendum, "may be considered when it is clear that the charging party intended the agency to investigate the allegations"). Although the information sheet is not attached as an exhibit to the complaint or responsive brief, the Court cannot at this stage conclude that no set of facts would entitle Milbrandt to relief. Accordingly, Counts I and II are dismissed without prejudice with respect to Milbrandt's allegations of a failure to cross-train and/or hostile work environment. The motion is denied as to the claims in Counts I and II alleging failure to promote in August 2013 and November 2013.[3]

---

[3] Plaintiffs' response acknowledges that only the August and November 2013 promotions are within the 300-day statutory period prescribed for filing charges. 42 U.S.C. § 2000e-5(e)(1); *see* Pls.'s Resp. at 4-5.

8

### B. IIED Claims

Defendants seek to dismiss both Plaintiffs' IIED claims on the basis that they are preempted by the IHRA, which gives the Illinois Human Rights Commission exclusive jurisdiction over civil rights violations. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006) (citing 775 Ill. Comp. Stat. § 5/8-111(C)). Tort claims that are "inextricably linked" to a civil rights violation are thus preempted by the IHRA. *See id.* However, not all tort claims related to a civil rights violation are preempted: "if a plaintiff can allege facts sufficient to establish elements of a tort, that tort is not preempted by the IHRA." *Id.* at 602-03. IIED claims "are not categorically preempted by the IHRA . . . because the tort claim require[s] more proof than is necessary to state a claim under the IHRA." *Id.* at 603. The relevant inquiry is whether Plaintiffs "can prove the elements of intentional infliction of emotional distress independent of legal duties furnished by the IHRA." *Id.* at 604.

Therefore, an IIED claim that is premised solely on the underlying civil rights violation itself is preempted. *See Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 905 (7th Cir. 2002) (sexual harassment); *Krocka v. City of Chi.*, 203 F.3d 507, 516-17 (7th Cir. 2000) (disability discrimination); *Smith v. Chi. Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1151 (7th Cir. 1999) (racial harassment). If, on the other hand, the elements of the alleged tort can be pleaded without reference to the civil rights violation, it is not preempted. *See Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23-24 (Ill. 1997) (assault, battery, and false imprisonment are not preempted by sexual harassment claim); *Naeem*, 444 F.3d at 605 (IIED claim based on employer creating

9

impossible deadlines, publicly criticizing and sabotaging plaintiff's work is not preempted by sexual harassment claim).

Defendants argue that Plaintiffs' IIED claims have no independent basis and are entirely premised on being denied promotions. Plaintiffs respond that the complaint alleges wrongful conduct outside the discrimination itself: "Defendants have scrutinized Milbrandt's conduct at work more so than her co-workers who were non-Hispanic and non-Mexican"; she was reprimanded for minute details; Defendants constantly watched her every move; Zepeda experienced insults and sexual comments; and a supervisor inquired of Zepeda whether a smell near her work station was due to her having sex with her husband. (First Am. Compl. ¶¶ 69, 71, 103-04.) The Court concludes that, to the extent the IIED claims are premised on facts and circumstances unrelated to discrimination, they are not preempted by the IHRA; however, the complaint's allegations of extreme emotional distress caused by discrimination are preempted and are dismissed with prejudice.

Next, Defendants contend that Milbrandt's IIED claim is barred by the Tort Immunity Act, which provides that civil actions against a local entity must be filed within one year after the claim accrued. 745 Ill. Comp. Stat. § 10/8-101. Defendants contend that Milbrandt's IIED claim accrued in 2012, when she alleges she was hospitalized for high blood pressure. Plaintiffs respond that the 2012 incident was one in a series of wrongful acts committed by Defendants, and as the case cited by Defendants, *Fang v. Village of Roselle*, explains, "when a plaintiff has suffered a continuing or repeated tort, the statute of limitations begins running at the date of

the last injury or when the tortious acts cease." No. 95 C 5176, 1996 WL 386556, at *2 (N.D. Ill. July 5, 1996); *see Leckrone v. City of Salem*, 503 N.E.2d 1093, 1101 (Ill. 1987). A liberal reading of the complaint supports the notion of a continuing tort, and it is premature at this stage of the litigation to conclude when the tortious conduct ceased and the cause of action accrued. The motion to dismiss Milbrandt's IIED claim based on the Tort Immunity Act therefore must be denied.

Finally, Defendants argue that Plaintiffs have failed to state a claim for IIED because the conduct alleged is not "extreme and outrageous," which is a necessary element of the claim. *See Naeem*, 444 F.3d at 604-05. Although Defendants are correct that courts are reluctant to find IIED claims in the workplace, extreme and outrageous behavior has been found to exist in the "employer/employee context when the employer clearly abuses the power it holds over and employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Id.* at 605 (citation and internal quotation omitted) (affirming IIED claim based on intense criticism and scrutiny by employers). Viewing the allegations in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have stated claims of IIED.

## C. Section 1983

Defendants argue that Plaintiffs' Section 1983 allegations that Defendant Brown accepted money payments in return for prospective employment and promotions ("pay to play") should be dismissed as time-barred, and *Monell* claims brought under the same section fail as a matter of law.

11

*1.     Statute of Limitations*

The statute of limitations on a claim brought under Section 1983 is two years in Illinois. *See Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). Defendants argue that because the complaint alleges that the "pay to play" hiring and promotion system has been occurring as early as 2001, Plaintiffs' claims relating to that system are barred by the statute of limitations. In the alternative, Defendants contend that the claims should be dismissed for failing to allege when each Plaintiff was apprised of the alleged "pay for play system."

Plaintiffs respond that they were not aware of Defendants' discriminatory "pay to play" system until recently. (*See* 1st Am. Compl. ¶ 109 ("On or about July 2014, . . . Milbrandt was informed that a former Chief Deputy Clerk, non-Hispanic, whose national origin is India, received the position as a result of a family member paying Defendant Brown $50,000.").) As a result, the claim accrued within the two-year statute of limitations period. *See Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) ("Section 1983 claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated."). At this stage, it cannot be determined as a matter of law what date Plaintiffs either knew or should have known about the alleged "pay for play" scheme. Defendants offer no support for the notion that the complaint must be dismissed *unless* Plaintiffs affirmatively allege an accrual date. Taking Plaintiffs' allegations as true, they have plausibly alleged that they only knew about the scheme within the statutory period. Defendants'

motion to dismiss Plaintiffs' Section 1983 claims based on the statute of limitations is therefore denied.

### 2. Monell *Liability*

Defendants next contend that Plaintiffs have failed to plead a pattern and practice of unconstitutional violations, and they also have not sufficiently alleged that Defendant Brown was personally involved in the violations. A governmental entity is only liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). *Monell* liability may apply "if the unconstitutional act complained of is caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009).

A plaintiff alleging a custom or practice claim "must demonstrate that there is a policy at issue rather than a random event. This may take the form of an implicit policy or a gap in expressed policies, . . . or a series of violations to lay the premise of deliberate indifference." *Id.* (stating that while there is "no clear consensus" on how often the conduct must occur to trigger *Monell* liability, it must be more than one or even three instances). According to Defendants, Plaintiffs have only alleged "a series of random events" rather than a policy or widespread practice.

13

(Defs.' Mot. at 13.) Specifically, Defendants argue that the complaint contains only two anecdotes alleging a "pay to play" scheme, which is not enough to raise a plausible inference of an unwritten custom or practice.

Plaintiffs respond that the cases cited by Defendants are distinguishable, because the wrongdoers in those cases were lower level employees and not policymakers. *See Gable v. City of Chi.*, 296 F.3d 531, 538 (7th Cir. 2002) (finding three separate incidents of an impound lot employee denying plaintiffs access to their vehicles were too few to establish a widespread custom); *Travis v. City of Chi.*, No. 10 C 3011, 2012 WL 2565826, at *5 (N.D. Ill. June 29, 2012) ("The court cannot conclude . . . that City policymakers were aware of the discriminatory behavior of the individual defendants and condoned it . . . ."). Two other cases are distinguishable because they did find the existence of a custom or practice. *See Thomas*, 604 F.3d at 303-04 (affirming jury's verdict of a widespread custom or practice when witnesses included policymakers who testified about a longstanding practice); *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988) (finding the state did have a practice and custom of sending inadequate unemployment interview notices, based on evidence of deficient computer-generated notices and a witness's testimony that he was instructed by his superior to omit details in order to complete more notices per day).

Defendants' motion to dismiss the *Monell* claims for failing to plead a pattern and practice must be denied. While the complaint relates only two incidents in which Plaintiffs were told about the "pay to play" system, that is not the same as

14

alleging that the system was only implemented on two occasions. Assuming all favorable inferences are drawn in Plaintiffs' favor, they have adequately alleged that a widespread unconstitutional custom existed, and that it was begun or continued with the knowledge and/or acquiescence of policymakers, including Defendant Brown, whom they allege accepted money directly in furtherance of the scheme.

### D. Joinder

Defendants contend that because Plaintiffs impermissibly added Plaintiff Zepeda to the amended complaint without prior leave of court, the complaint should be stricken or in the alternative, Plaintiffs' claims should be severed pursuant to Federal Rule of Civil Procedure ("Rule") 21. Rule 20 provides that plaintiffs may be joined in one action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). According to Defendants, Plaintiffs' claims do not involve the same transaction or occurrence because they had applied for, and were denied, different promotions; although they both raise discrimination based on Hispanic national origin, they are natives of different countries; and allowing joinder would unfairly force Defendants to defend the litigation based on different facts, circumstances, and timelines.

While the Court does not condone Plaintiffs' failure to obtain leave before adding Zepeda to the complaint, it accepts the explanation that Plaintiffs' counsel

15

mistakenly believed that leave was granted during the November 4, 2015 hearing. Furthermore, if leave had been sought, it would have been granted. Both Plaintiffs allege a general pattern and practice of a discriminatory promotion process. The questions of law and fact governing that process are common to both Plaintiffs even if the jobs each Plaintiff sought were different. Defendants' other objections are entirely unpersuasive. Both Plaintiffs allege discrimination based on their Hispanic origin, not their particular nation of birth. Defendants have offered no reason why one Plaintiff being from Mexico and the other from El Salvador gives rise to such a different set of facts and circumstances that joinder is unfeasible. Finally, although it is true that adding Zepeda will add facts, circumstances, and timelines that were previously not present in Milbrandt's case, Defendants have not shown that severing the claims will result in any benefit. Indeed, both Court and attorney resources will be saved by joining the claims, avoiding duplicative discovery and motion practice. Defendants' motion to sever is therefore denied without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss and/or Strike Plaintiffs' First Amended Complaint [Doc. No. 27] is granted in part and denied in part. Plaintiffs are ordered to file an amended complaint consistent with this opinion no later than two weeks from the date of this order.

**SO ORDERED.**                      **ENTERED:**

**DATE:**     **June 20, 2016**             _____
                                                          **HON. MARIA VALDEZ**
                                                          **United States Magistrate Judge**